**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| CARMEN EDIGNA VÉLEZ CASTRO, | |
| Plaintiff, | CIVIL NO.: |
| v. | |
| METRO SANTURCE, INC., alternatively, UNKNOWN CORPORATION "A", d/b/a HOSPITAL PAVÍA SANTURCE; JOHN DOE 1, 2 and 3; INSURANCE COMPANIES A, B, C and D, | PLAINTIFFS DEMAND TRIAL BY JURY |
| Defendants. | |

**COMPLAINT**

**TO THE HONORABLE COURT:**

Plaintiff, Carmen Edigna Vélez Castro, through her undersigned attorney, respectfully states and prays as follows:

**Jurisdiction and Venue**

1.      The events and omissions giving rise to the claims set forth in this action all occurred within the District of Puerto Rico and the Commonwealth of Puerto Rico.

2.      Federal jurisdiction in this case is attained under diversity pursuant to section 1332 of Title 28, United States Code.   Venue is appropriate in this judicial district pursuant to section 1391(b) of Title 28, United States Code.

3.      The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

**Parties**

4.      Plaintiff, Carmen Edigna Vélez Castro ("Mrs. Carmen Vélez Castro") is the sister of Mrs. Ana Isabel Vélez Castro ("Mrs. Ana Vélez Castro"), deceased.  Mrs. Carmen Vélez Castro is a citizen and resident of the state of Connecticut.

5.      Defendant Metro Santurce, Inc., alternatively, Unknown Corporation "A", d/b/a Hospital Pavia Santurce ("Hospital Pavía Santurce") is, by information and belief, a corporation organized under the laws of the Commonwealth of Puerto Rico, which has its principal place of business in Puerto Rico and is the owner and/or operator of a hospital known as Hospital Pavia Santurce in San Juan, Puerto Rico.

6.      John Doe 1, 2 and 3, Defendants whose names are unknown, are physicians, nurses or other persons or entities that provided medical treatment to Mrs. Ana Vélez Castro at Hospital Pavía Santurce during her last admission, who incurred in negligent actions or omissions which caused or contributed to the damages claimed herein.

7.      Defendants Unknown Insurance Companies A through D, insurers whose identities are presently unknown, insured the aforementioned defendants and are jointly responsible with their respective insureds for the damages claimed herein pursuant to section 2003 of Title 26 of the Annotated Laws of Puerto Rico.

**Factual Allegations**

8.      On November 21, 2012, Mrs. Ana Vélez Castro, seventy three (73) years of age at the time and deceased sister of Plaintiff Carmen Vélez Castro, went to Hospital Pavía Santurce for the removal of a subcutaneous medical device known as "Med Port", which had been implanted approximately fifteen years before when she had successfully received breast cancer treatment.

9.     Mrs. Ana Vélez Castro presented symptoms of anemia and general weakness upon being evaluated during the preadmission process at Hospital Pavía Santurce.   Initial exams and analyses revealed the patient had high arterial blood pressure, a potassium level of 5.5, hemoglobin level at 8 and a creatinine level at 2.5. Due to such findings, Mrs. Ana Vélez Castro was admitted to Hospital Pavía Santurce to have her systemic condition stabilized. Specifically, medication was administered to treat the patient's high blood pressure and blood transfusions were ordered in attention to Mrs. Ana Vélez Castro's anemic condition.

10.    The pharmacologic treatment for high arterial pressure initially consisted of a dose of Metroprolol every 12 hours.   Afterwards, the patient was administered doses of Norvasc, Avapro and Cardura, all medications for hypertension. The patient also received medication to treat her high levels of potassium and bicarbonate.

11.    Additionally, Mrs. Ana Vélez Castro received transfusions consisting of two blood units in four separate segments or fractions.   The patient's arterial blood pressure during the first transfusion fraction was 120/80.   Nevertheless, the patient's blood pressure rose during the night of November 21st and early morning of November 22nd of 2012 (at 2:00 a.m. the patient's blood pressure was of 200/70), reason for which Bumex was administered intravenously (I.V.).   By 11:00 a.m. on November 22nd, 2012, the patient's blood pressure had decreased to 120/80, although later in the day Mrs. Carmen Vélez' blood pressure rose again, with readings of 140/80, 180/80 and 200/80, which is why various additional hypertension medications were administered to the patient (Catapres 0.1mg., followed by Vasotec I.V. 1.25 mg.).   Later, during the evening of November 22nd, 2012, Bumex I.V. was again administered to the patient.

12.    Even though the patient received multiple doses of medications to treat her hypertension, the notes in her clinical file at Hospital Pavía Santurce do not reveal

what was Mrs. Ana Vélez' blood pressure during the course of her treatment on the night of November 22nd, 2012.  In other words, on November 22nd, 2012, Mrs. Ana Vélez Castro received intensive pharmacologic treatment for hypertension, but the medical and nursing staff failed to adequately monitor her progress during the night.

13.     According to the nursing progress notes contained in the patient's medical record, at 2:00 a.m. of November 23rd, 2012, a member of Hospital Pavía Santurce's nursing personnel was making rounds, and observed Mrs. Ana Vélez Castro sleeping, calm and without breathing difficulties.

14.     At around 3:00 a.m. of November 23rd, 2012, Mrs. Ana Vélez Castro requested from a male nurse who was making his rounds and had entered her room (identified in the medical record as Mr. Colón), to be taken to the restroom, presumably to defecate.  Mr. Colon proceeded to take Mrs. Vélez Castro to the restroom located in her hospital room, after which he left her seated on the toilet and left the room, allegedly giving the patient instructions to call him when she finished.

15.     According to the nurse's progress notes, 3 to 4 minutes after leaving the patient alone Mr. Colón returned to the room and found Mrs. Ana Vélez unconscious, her body on the bathroom floor, with her face down and on her left side, with her head lying outside of the bathroom.  The nursing progress notes indicate that Mr. Colón also observed a bruise on the patient's left eye, which, according to the autopsy report, resulted in a 5 cm. contusion that extended throughout the upper eyelid of her left eye.  The nurse's progress notes also indicate that Mr. Colón screamed for help and two nurses, Mr. Ramos and Mr. Medina, answered by appearing at the patient's room.

16.      While Mrs. Ana Vélez Castro was lying on the floor, Mr. Colón observed she was not breathing, but felt she had a pulse and together with Mr. Medina lifted and carried the patient to the bed.  Then, according to the progress notes, the nursing staff

"issued a Mayday code", proceeded to provide basic cardiopulmonary resuscitation (Basic CPR) and placed a cardiac monitor on Mrs. Ana Vélez Castro, which indicated the patient had a heartbeat of 128 beats per minute.

17.     Next, according to the nurse's progress notes, Mr. Medina "commented" that Mrs. Vélez Castro had *Anticipated Directives*, which were looked for in her medical record and verified; Mr. Colón and Mr. Ramos continued providing Basic CPR to the patient, with her airway open and using a mechanical ventilation devise known as an *Ambu Bag*.

18.     The *Anticipated Directives* form that appears in the certified copy of Mrs. Ana Vélez Castro's medical record of her last admission at Hospital Pavía Santurce, is not signed by the patient, nor does it contain the required signature and license number of the registered nurse (RN) who had the duty to explain to the patient the purpose and scope of the pre-set directives.   Nevertheless, someone's illegible signature does appear on the space provided for the patient's signature in the *Anticipated Directives* form, despite the fact that the document clearly instructs that only the patient's signature is permitted and that if the patient is no able to sign, the reasons why he/she did not sign have to be documented therein.

19.     It is important to point out that Hospital Pavía Santurce's *Anticipated Directives* form contains various options to choose from.  The copy of said form in Mrs. Ana Vélez Castro's certified medical record of her last admission at Hospital Pavía Santurce, indicated two marked options: (1) the *I Wish to Exercise the Following Anticipated Directives* option; and the (2) *Do Not Resuscitate* option.  The meaning, breadth and scope of the *Do Not Resuscitate* option is not defined, nor is the form accompanied by an additional document clarifying under which circumstances the patient should not be resuscitated.

20.     Afterwards, Mr. Medina proceeded to call a physician identified in the progress notes as Dr. Stoddart, notifying him of the situation.  Dr. Stoddart instructed Mr. Medina to follow the *Anticipated Directives* and to call Dr. Aviles and Dr. Russé, who apparently were the physicians who were supposed to be available, "the ones covering", in case of an emergency.  According to the nurse's progress notes, Mr. Medina called Dr. Aviles and Dr. Russé via telephone, but they did not answer the phone, therefore, he was unable to communicate with them.

21.     Afterwards, anesthesiology and respiratory therapy hospital personnel showed up at Mrs. Vélez Castro's room in order to carry out the patient's intubation. According to the progress notes, Mr. Medina informed said personnel that there were instructions not to resuscitate the patient, even though Mr. Colón and Mr. Ramos continued providing cardiopulmonary resuscitation (Basic CPR) to the patient.  Then, one of the nurses called the emergency room (E.R.) so that the physician in charge of the E.R. would take care of the emergency situation they were confronting with Mrs. Ana Vélez Castro.  Based on someone's interpretation of the alleged patient anticipated directives, the nurses continued providing Basic CPR to the patient, but did not provide "shock" treatment to resuscitate her, and denied the patient her last chance to survive by not allowing Mrs. Ana Vélez' intubation.

22.     According to the progress notes, Mrs. Ana Vélez Castro died at 3:08 a.m. on November 23rd, 2012.  In other words, according to the nurse's notes in the certified copy of the Mrs. Vélez Castro's medical records, in the course of 8 minutes: Mr. Colón, nurse, entered Mrs. Vélez Castro's room and spoke with her; assisted her and took her to the bathroom in her room; left the room; returned 3 to 4 minutes later; found the patient lying on the floor and screamed for assistance; two additional nurses arrived; the patient was taken to her bed from the floor and monitors were connected to her; a

*Mayday* alert was launched; Basic CPR techniques were started on the patient, who had a pulse; alleged patient *Anticipated Directives* were verified; communication was established with Dr. Stoddart and instructions were received from him; Dr. Aviles and Dr. Russé were called, but they did not answer; anesthesiology and respiratory therapy personnel arrive at the room to intubate the patient; nursing personnel determines not to intubate the patient, even though they continue to attempt to resuscitate her; a fourth physician, one in charge of the E.R. at Hospital Pavia Santurce is called; the patient dies.

23.    After receiving the news of the death of their mother from hospital personnel, Mrs. Ana Vélez Castro's daughters and son showed up at Hospital Pavía Santurce and inquired about the circumstances that had led to the totally unexpected death of their mother, whom they had left at the hospital the previous evening in fair and stable physical condition.

24.    Due to the suspicious circumstances surrounding the patient's death, including the wound above her left eye, one of Mrs. Ana Velez Castro's daughters put into question the explanations provided by the Hospital *Pavía* Santurce's nursing staff regarding the reasons for her mother's death.  The explanations did not make sense. Unsatisfied with the nursing staff's explanations the patient's family members requested that an autopsy be performed, therefore, the hospital staff activated a protocol and called the Puerto Rico Police Department so that they would begin an investigation.

25.    A police officer who arrived at Hospital Pavía Santurce to investigate Mrs. Ana Vélez Castro's death pointed out to one of the deceased patient's daughters that a broken lamp was found on the bathroom floor in her mother's hospital room.  Upon hearing this information both daughters entered the room and confirmed the fact that there was a broken lamp on the bathroom floor in their mother's room.  Additionally, the

sisters noticed, different from the night before, that a "foam" ceiling plate was missing from the room's ceiling.  The district attorney who showed up to clear the body verified that the deceased patient had a bruise on her face and that there was a broken lamp on the room's bathroom floor, and, after consulting the matter with a police officer present at the scene, authorized that an autopsy be performed on Mrs. Ana Vélez Castro at the Forensic Sciences Institute.

26.     Mrs. Ana Vélez Castro's death was caused by the professional negligence of Hospital Pavía Santurce and its medical and nursing personnel, who failed to comply with the applicable norms of medical and nursing care, or with the reasonable prudence and attention that the circumstances demanded in the treatment of such a patient.

27.     The fact that the nursing personnel took a high-risk patient, suffering hypotension due to overtreatment with blood pressure medication, out of her bed to later leave her alone and unattended at the toilet in the middle of the night constitutes gross negligence on behalf Hospital Pavía Santurce's nursing staff.  Said nursing staff knew or should have known and foreseen the risk that a patient in Mrs. Ana Vélez' condition could suffer a vasovagal syncope after defecating and/or standing up alone from the toilet, which in turn would cause the patient to collapse and hurt herself, as in fact occurred.

28.     The unfulfilled duty to act in a timely and adequate manner in order to save the patient's life after becoming aware of Mrs. Ana Vélez Castro's critical condition in the early hour of November 23rd, 2012, constitutes an additional departure from the accepted standards of medical and nursing care on the part of Hospital Pavía Santurce's medical and nursing personnel.  Nothing excuses the fact that a hospital staff physician did not timely appear at Mrs. Ana Vélez Castro's room in order to take the necessary measures to save her life, including providing intubation.

29.     The vagueness and imprecision of Hospital Pavía Santurce's *Anticipated Directive* form and the irregular and suspicious manner in which said form was filed out in the case of Mrs. Ana Vélez Castro, constitute adequate cause of the damages caused by the defendants in the present case.

30.     Additionally, the deviations from the accepted practices of the medical profession and hospital-medical care and/or the professional negligence of the codefendants in this case, include, but are not limited to: failure to review the patient's potassium levels after having administered 3 doses of Kayexalate in a period of 12 hours, plus multiple doses of Bumex IV and insulin, all of which are medications that lower potassium levels on a patient where those levels are critical to maintain her hemodynamic stability; failure in the adequate monitoring of the patient's arterial blood pressure by not taking her pressure levels at the frequency required after administering multiple medications in treating hypertension; failure to adequately monitor the patient's arterial blood pressure by taking the patient's pressure while she was lying down, which artificially elevates such pressure; failure to have telemetric equipment in place to monitor the patient's vital signs; failure in recognizing the danger posed by the treatment with multiple medications for hypertension without allowing time for each to take effect ("stacking of the doses"), which in all probability would result in severe hypotension; failure to recognize the high risk of a fall of leaving a patient with hypotension alone in the bathroom toilet; failure to recognize the risks allowing a hypotense patient to stand up from her bed, which causes an immediate drop in arterial blood pressure; failure in patient management by allowing a high risk hypotension patient to remain sitting on the toilet without the immediate presence of nursing personnel to watch, be vigilant, assist and attend the patient; *in eligendo* negligence on the part of Hospital Pavía Santurce by failing to select appropriately trained nursing personnel; failure by Hospital Pavía

Santurce's medical personnel which did not timely appear at the patient's room when the *Mayday* alert was activated; failure by Hospital Pavía Santurce in preparing an adequate *Anticipated Directives* form, with unambiguous and specific options that would allow the patient to issue clear instructions to be followed upon becoming incapacitated if that was what she desired; failure by the hospital's medical and/or nursing personnel in obtaining the informed consent of the patient while filing out an *Anticipated Directives* form that appears in the certified copy of Mrs. Ana Velez Castro's medical record of her last admission at Hospital Pavía Santurce; and failure by Hospital Pavía Santurce's medical and nursing personnel by not following said medical institution's own norms in completing the *Anticipated Directives* form.

31.    Due to the negligence of all of the codefendants in this case, Mrs. Ana Vélez Castro lost her life prematurely, under circumstances that allowed her to have avoided such a tragic outcome.

32.    As a consequence of the foregoing, the family life, social and psychological wellbeing of Plaintiff, Mrs. Carmen Edigna Vélez Castro, has been severely altered, depriving her of the company, nourishing and attention of her only sister with whom she had a very close relationship.  The unnecessary loss of her sister, Ana, whom she spoke with on an almost daily basis, has caused Plaintiff irreparable harm as well as a deep and persistent mental anguish.

33.    The damages suffered by Plaintiff, Mrs. Carmen Edigna Vélez Castro, are valued in a sum no less than $700,000.00, for the past, present and future suffering and mental anguish resulting from the untimely and unnecessary death of her sister.

34.    Codefendants and their respective insurance companies are commonly liable to Plaintiff for the negligent acts and damages described in the present complaint.

## COUNT I

### (Medical Malpractice, Vicarious Liability - 31 L.P.R.A. § 5141; 5142)

35.     Paragraphs 1 through 34 of this Complaint are incorporated by reference as if fully set forth herein.

36.     Defendants Metro Santurce, Inc., alternatively, Unknown Corporation "A" d/b/a Hospital Pavía Santurce, and John Doe 1, 2 and 3, had a duty to provide medical care to Mrs. Ana Vélez Castro that complied with the applicable standards of the medical profession.   Notwithstanding, Metro Santurce, Inc., alternatively, Unknown Corporation "A" d/b/a Hospital Pavía Santurce, John Doe Defendants 1, 2 and 3, breached that duty as set forth above.

37.     Metro Santurce, Inc., alternatively, Unknown Corporation "A" d/b/a Hospital Pavía Santurce is further vicariously liable for the negligent acts and/or omissions incurred by its medical and nursing staff that intervened with Mrs. Ana Vélez Castro, as well as for its own negligence in the selection, monitoring, supervision and granting of privileges to said doctors and nurses, including codefendants John Doe Defendants 1, 2 and 3.

38.     There is a clear and direct causal link between the medical malpractice and/or negligence of Metro Santurce, Inc., alternatively, Unknown Corporation "A" d/b/a Hospital Pavía Santurce and John Doe Defendants 1, 2 and 3 and the damages sustained by Plaintiff, as set forth above.

## COUNT II

### (Direct Action Against Insurers - 26 L.P.R.A. § 2003)

39.     Paragraphs 1 through 38 of this Complaint are incorporated by reference as if fully set forth herein.

40.     Defendants Unknown Insurance Companies A through D have a

contractual obligation to compensate those who are damaged by the medical errors and omissions of defendants Metro Santurce, Inc., alternatively, Unknown Corporation "A" d/b/a Hospital Pavía Santurce and John Doe Defendants 1, 2 and 3.  As set forth in Count I, above, these defendants committed medical malpractice and/or negligence with respect to Mrs. Ana Vélez Castro.  Moreover, there is a clear and direct causal link between their misconduct and the damages sustained by Plaintiff, as set forth above.

41.    Under 26 L.P.R.A. § 2003, Plaintiff has a right to reclaim directly against the corresponding insurers of defendants Metro Santurce, Inc., alternatively, Unknown Corporation "A" d/b/a Hospital Pavía Santurce and John Doe Defendants 1, 2 and 3.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter final judgment against Defendants:

1.    Declaring Defendants to be in violation of 32 L.P.R.A. § 5141, 5142 and 26 L.P.R.A. § 2003, as alleged hereinabove.

2.    Finding Defendants jointly and severally liable to Plaintiff for the economic and non-economic damages sustained by Plaintiff, in an amount not less than $700,000, plus applicable interest and costs.

3.    Awarding Plaintiff such other and further relief at law or in equity as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues triable of right by a jury in the complaint set forth above.

In San Juan, Puerto Rico, this 7th day of February, 2014.

**RESPECTFULLY SUBMITTED.**

s/<u>Hatuey Infante Castellanos</u>
HATUEY INFANTE CASTELLANOS
USDC-PR 225713
**HATUEY INFANTE LAW OFFICES, P.S.C.**
Attorneys for Plaintiff
P.O. Box 12014
San Juan, PR 00914
Tel: (787) 399-2238
Fax:(787) 641-5016
hatueyinfante@gmail.com